Good morning. May it please the Court, my name is Paul Nordstrom. I am here today representing the petitioner, Pacificorp. I'll be joined this morning by Eric Christensen for the intervenors to the Homeland Public Utility District and will allocate four minutes of my time to him. Members of the Court, I would like to offer three grounds for reversal and remand of FERC's decision below. That the Commission advocated its statutory duty to determine the justness and reasonableness of the rates in question. That its predetermination rationale is contrary to this Court's recent decision in Lockyer v. FERC and is otherwise erroneous. And that its finding that the parties intended that the public interest standard be applied is completely unsupported by the contract language and contradicted by substantial evidence. Mr. Christensen, when he appears, will explain that even under the public interest standard, Pacificorp should prevail here. Before I get to my first point, Your Honors, I would like to commend to you FERC Commissioner Massey's compelling dissent below and urge you to read it. Members of the Court, this case and its two sister cases, which were heard by another panel of this Court in December, represent important cases of first impression for the courts of appeals. Is this case controlled by the December panel, no matter what it does? I don't believe it necessarily is, Your Honor. But needless to say, the legal arguments are very similar in these cases. And there are actually two separate cases that the December panel heard. One of those cases involved three separate petitioners. There are slightly different facts and slightly different contractual circumstances with respect to each of those. Mr. Christensen, who was involved in this case, is a little bit more familiar with their details than I am. Certainly the legal issues are very, very similar. Counsel, FERC has a somewhat unusual rule, as I recall, that if on a petition for rehearing they come up with something new, you have to petition for rehearing again. And in this case, there wasn't a petition for rehearing from the decision on rehearing. And it looks like they came up with something new, that language at the very end of the decision, where they say, regardless of these other things, we still wouldn't exercise our discretion for Pacific Court. What jurisdiction is there and what's left if we can't review that new reason? Well, Your Honor, I certainly think you can review the entirety of FERC's orders below. The particular language that you referred to arose in the very last paragraphs of FERC's order on – very lengthy order on rehearing. The key case that was cited, Heckler v. Cheney, appears in footnote 106 of that decision. What does Heckler have to do with it, though, if FERC's statement – what it says is, even if the rates are unjust and unreasonable, and even if the public interest is implicated, we're not going to reform these contracts, in effect. We're not going to do anything about it. And that statement or conclusion is not appealed. Whether or not it could be and whether or not it's right or wrong under Heckler, why isn't that conclusion binding on us, such that if we went forward and discussed anything, we would be rendering, in effect, an advisory opinion? Well, of course, I certainly agree that Heckler is not binding on the Court. We look to the mandatory language of FERC section 206. That's not the question. That's not the question. My question is, why aren't we bound by an unappealed statement that even if the just and reasonable standard applies, and even under the public interest standard, FERC is not going to issue any remedy? Well, Your Honor, I don't believe that another request for rehearing was appropriate in this case. That's fine. I didn't ask that. Okay. Okay? I'm carefully – I'm trying to constrain my question. If your question goes to did we appeal that, we certainly did appeal that. No, you didn't. That was in our first petition for appeal. FERC issued its order, its original order on the merits, in June of 2003. And it decided – I think Judge Reimer and I may be focusing on slightly different things. My focus was on this language in 16 U.S.C. 825 – or 8251B, where it says, to the order of the commission shall be considered by the court unless such objection shall have been urged before the commission in the application for rehearing unless there is reasonable ground for the failure to do so or so to do. Now, what I'm focusing on is they've got this new thing at the very end of the FERC decision on rehearing that even if you write on everything, you'd still lose. And there's no application for rehearing of that new rationale, that new paragraph, and an entirely new notion. So what I'm thinking is we're not allowed to consider any objection to it, and we're bound by it. And I'm asking you, there is an unless. Unless there's reasonable ground for failure to do so. So I'm asking, is there a reasonable ground for failure to do so? And I'm asking, if not, what is there for us to do? Well, Your Honor, again, I don't believe that we did not address that argument. That argument is part and parcel of what the entire case is about, whether or not Pacificor should be granted relief under the Federal Power Act for unjust and unreasonable rates. That is the entirety of the case. And it was dealt with ad nauseam before, Your Honor. It may have been dealt with ad nauseam, but sometimes one has to go beyond ad nauseam. The question isn't whether Pacificorp was entitled to have them look at just and reasonable rates. And the question isn't whether you did or did not establish the elements for public interest review entirely. The question is neither one of those. We can say there are three legs this thing stands on. And the final leg that FERC erects, which is a sea change or anything that's come before, the final leg it erects is, even if you prove your case to us, we would not grant relief because we're not required to in the exercise of our administrative discretion. We wouldn't grant relief no matter what. Now, let's say that's what's happened for the moment. They've said that. So if I now make a decision and say, gosh, guys, you should have done a better public interest analysis. And if you had, relief would have been available. That won't do any good, will it? Because they still got this leg that says, sorry, we don't grant relief no matter what. And that's the issue that strikes me anyway. I don't see it. Unless I missed the record. You didn't ask and reconsider that question. And you also, I think, did not raise that issue on appeal. Your opponents raised it. And you fluffed it off in your reply brief. But you did not raise that question on appeal as far as I can see. So maybe I'm sort of betwixt being Judge Kleinfeld and Judge Ryan. Well, Your Honor, I go back to the point I was making before, that we have always viewed that argument to be integral to the major issue in the case, and that it was argued at length. And I think there's an important public policy consideration here, that here we have the section 313B of the Federal Power Act requires that we submit a request for rehearing before an issue becomes, before the case becomes ripe for appeal. We did submit a request for rehearing of the Commission's decision. Now, in the order on rehearing, the Commission, at the very end of the order, adds a new little twist to the argument, and in footnote 106, cites a new case that it had not cited before. I don't think that that warrants tossing out the entire case on the merits. I think there's a central to the whole case. Isn't it more than a twist? I mean, if I say, look, make it a sentencing case, whatever kind of case you want, look, I think you lose on the merits. And even if you didn't lose on the merits, I exercise my discretion to say that I won't give you any relief. You better appeal both of those things if you want to get your appeal. So have you not? Well, again, Your Honor, I come back to I think this was part of what we were arguing all along. If you look at the very minimal facts that Firk addressed in the paragraph or two paragraphs that dealt with this issue, they're the very same facts that were part of the case all the way along. There's nothing new in there. It is simply a new twist on the argument that Firk put into the very last page, footnote 106 of its order on rehearing. Well, it's also paragraph 66 and 67. Yes. You can just keep saying footnote 106. But it's not just tucked away in a footnote. It's a solid holding under the words remedy, paragraph 66 and 67. The footnote happens to be the authority to support what they're saying. If you believe that's good authority or not is not the question.  Well, the one other fact that I would urge the Court to consider and let Mr. Christensen confirm this point is I believe that Snohomish, which was initially a petitioner from this case to the Ninth Circuit, did raise that issue and has appealed that issue. So that the petitions that were the petition that was filed did address that issue before the Ninth Circuit. What would happen if we were to agree with you and sent this case back? What would Firk do in the face of paragraph 67 and 68? Well, I hope that you would send this case back with an instruction to Firk to determine the just and reasonable level of the rates. You've already said even if it's unjust and unreasonable, we ain't going there. These contracts are a dead dot, and we're not going to exercise our discretion to reform them, even if you're correct that they're unjust and unreasonable. But I think, Your Honor, that is exactly what you can instruct Firk to do, to determine the level of justness and reasonableness of the rates. Counsel, I had trouble, assuming we get to the merits, I had trouble distinguishing your argument from the argument of somebody who buys a house during a bubble for $500,000, and then it drops to $300,000 in the market, and he wants to walk away from his mortgage. And it looks to me like Firk had similar trouble. It said that as far as the public interest is concerned, if we let Pacific Corp. walk away from these contracts, it will hurt investment in the industry because people can't count on the contracts. And these are big boys. They bought these with their eyes open, and they knew what they were doing. It's a very small part of their net worth. What's more, it's even hard to see that the rates are not just and reasonable, even aside from that public interest discussion by Firk, because that's what the market was at that time for these forward contracts. Even if we get to the merits, I don't quite see why Firk's decisions to that effect are arbitrary and capricious. Well, Your Honor, I think there was a lot to your question, but I think you started out on the issue of is this just a case of buyer's remorse, and how does this case differ from any other commercial transaction? And the reason that it differs from other commercial transactions is that it is governed by Sections 205. The way it differs from the homeowner is that the law doesn't let the homeowner appeal to some government agency to get out of his deal, and it does allow an electric utility to appeal to an agency and get out of its deal. But as for whether it should get out of its deal, Firk says, well, you can't look at just and reasonable in retrospect, and if you don't, there's no problem there. There's no problem, and you don't even use that standard anyway. You use the public interest standard, and it would not be in a public interest to let Pacific Corp. out of this. And since we review only to see whether it's arbitrary and capricious, I'm having trouble seeing why it is. Well, the difference with the $500,000 house hypothetical is that the $500,000 purchase price is not illegal. In this case, the rates that were charged were excessive. They were unjust and unreasonable, and therefore they were unlawful under the federal power act. You're pointing the ones that Pacific Corp. charged in turn to people like Williams, to whom it sold at those prices? Williams was free to submit a complaint against Pacific Corp. Pacific Corp. is the vast majority of Pacific Corp. sales during this time. The vast majority, this is an important point, Your Honor, the vast majority of Pacific Corp. sales during this time went into the California spot market. And in that case, Firk has said that the buyers will be responsible for refunds. So Pacific Corp. is caught in between two different regimes. One, for its sales during this time, which of course are smaller than its purchases, it's a net buyer. It is subject to refund authority. But for its purchases in the forward market, it's not able to get refunds when the prices were excessive. It is really being caught between conflicting rules. Members of the Court, I don't want to leave you, but I intended to give Mr. Christensen a few moments and want to reserve some time for rebuttal. So with your permission, I'll sit down, but I'd be glad to keep going if you would like me to. We'll hear from Mr. Christensen. Good morning. May it please the Court, I'm Eric Christensen for Snohomish County PUD. Let me address, first of all, the rehearing question that was raised. I believe in our reply brief we cite a trio of cases from the D.C. Circuit that establishes pretty clearly that if Firk, in a rehearing order, simply offers a new rationale but doesn't change the substantive result of the case, there's no obligation to file a rehearing petition. And, in fact, to make that requirement would allow Firk to defeat judicial review by just continually adding a new little tweak. In addition, they say if you think it's so trivial that you needn't ask petition for review, you also can't get it reviewed on appeal. If it's that trivial a point, we still won't review it on appeal because you thought it was so trivial. So if it's that trivial, we can't review that issue on appeal and we're back where we started because on that trivial point it sinks you no matter what we do. So, Don, aren't you caught between? Well, I disagree with – I mean, in my reading of those D.C. Circuit cases is that there's no need to address a new rationale if the substantive result of the case doesn't change and that doesn't preclude the Court from addressing the new rationale. Is that just a new rationale?  A rationale is a new reason for the same result, but this is kind of a new result. It says even if we're wrong on whether to use just and reasonable or public interest, and even if we're wrong in our analysis of public interest, you still won't get relief. I respectfully disagree with that reading of the order. I believe the footnote is just another version of – I'm talking about the paragraphs in the substantive – Right. I believe if you read the rehearing order, it just says we have discretion to not offer a remedy here, which is directly discussed in our rehearing petitions. And we are exercising it not to. Pardon me? And we are exercising it not to. Right. And in the rehearing petitions, both parties, both odds from Pacific Corps, specifically raised the issue by arguing that the statute requires a – mandatorily requires a remedy in this case, which is directly contrary to the assertion there. And the argument in the briefs work sort of transmogrifies that into we have unreviewable discretion to do anything we want, which is different than what is said in the rehearing order. Reasonable to me what they do here. They say, look, our task in this new paragraph 66-67, our task isn't to give buyers a break when they bought a white elephant. Our task is to keep the juice flowing in the wires. And there's no threat Pacific Corp will be unable to continue service if we don't give relief. And it's all over anyway. The contracts have been cashed out or settled. Yeah. Nothing is going to happen to electric service if we don't give relief. So we just don't care. I think that's an incorrect statement of the law. Under Section 205 and 206, FERC has a mandatory duty to correct unjust and unreasonable rates after the refund effective date. There's a violation prior to the refund effective date. That's the area where FERC has large discretion on whether or not to offer a remedy. Once the refund effective date kicks in, there's no discretion. The statute says they shall remedy unjust and unreasonable rates. So with that, unless there are other questions, I think we're going to save a little time. Thank you. Ms. Perry? Good morning, Your Honors. Lona Perry for the Commission. I would like to, if I might, cede five minutes of time to Mr. Irvin, who is counsel for the interveners for Respondent. I'd like to address first the point that has been discussed much during the petitioner's argument, which is that the finding that the Commission made in its rehearing order, that even assuming the findings that the Commission had made up to that point were we are looking at the allegations that were made under the public interest standard and we are finding that the petitioner failed to meet the public interest standard. In the order on rehearing, the Commission made a completely new finding, which is even if you assumed that the petitioner met the burden that they needed to meet, we still would not grant relief and we would not do so under Heckler v. Chaney, which gives us enforcement discretion, and we would not do so under the cases that say that we have remedial discretion as well. Well, I didn't quite understand what FERC's position is, in the brief at least. You don't seem to be arguing. Well, you say that this issue is gone, in effect. I don't know what you mean when you say this issue. Are you arguing that the two paragraphs mean that no issue in this case that's raised can be reached, or do you mean something different from that? What I mean, Your Honor, is that the Commission made an entirely alternative holding, which is that even if you assume that everything they had proven, everything that they were alleging to be true, we are going to exercise our discretion to not grant remedy, and therefore that finding cannot be reviewed because there was no hearing sought of it and there was no appeals sought of it. And that's an entirely alternative. But where does that lead you? I don't understand what the government's position is. Where does that lead you? That leads you to an entirely alternative grounds for denying their complaints, which gets rid of the entire case. Across the board? That's right, Your Honor. It was an entirely alternative ground for denying the petitioner's complaints, which were for modification of these contracts, and that is an entirely separate basis on which the Commission was saying, even had they proven the allegations in their complaints, we still would have denied the complaints for relief. Counsel, let me put it another way to be very clear on what you're saying. They, I'll say simply, make two arguments. They say, first, the just and reasonable standard should apply. Second, even if you apply the public interest standard, we met the standard and we should get relief. Are you saying that FERC's position goes to both of those points? One, even if the just and reasonable standard applies, we exercise our discretion not to give relief. And two, if the public interest standard applies, we exercise our discretion not to give relief. Is that the government's position? Yes, Your Honor. And if you look at paragraph 66, which is at the excerpts of record at 1585, the Commission specifically says, even if Pacific Corp established that its rapes were not just and reasonable, I mean, they were referring not just to the public interest standard, but also to whether or not they met the just and reasonable standard. They were saying under either circumstance, given the circumstances of these contracts compared with the beginning with Mobile Sierra, the longstanding public policy in favor of preserving the sanctity of contracts, that the Commission would exercise its discretion to not provide any remedy in this case. And that balancing of policies is exactly the sort of thing that Cheney said should be left to the agency's unreviewable discretion. Is it your position that that issue is before us or not? Well, no, Your Honor. Because it wasn't raised on a hearing and because it was never raised in the brief, I don't believe that it is even properly before the Court. I mean, again, to be clear, the issue I'm talking about is whether the Commission properly exercised its discretion to decline to grant the remedy under Heckler. That's right, Your Honor. And it would not be properly before the Court because it was not properly raised on appeal and there was no rehearing sought of that alternative finding. And therefore, that's a basis on which to affirm the Commission's orders denying the petitioner's complaints without ever reaching the merits of the. Would that mean we never decide whether we agree with Heckler because there's no petition for rehearing on that? We just take the case as moot? Right, Your Honor. Is there anything left of it? There wouldn't be anything left, no, Your Honor. I mean, the Commission had an alternative reason for disposing of the petitioner's complaints and that alternative reason was never raised on a hearing, never raised on appeal,  Well, those are two different things. The first one, never raised on rehearing, is a question of jurisdiction, I take it, in the jurisdictional sense in the statute. The question of not raising your brief is a question of waiving the issue on appeal. Are you saying both of those apply, whichever one you like, or we like one better than the other, or what? Oh, no, Your Honor. They both apply. Absolutely. I mean, there was no request for rehearing of the rehearing order. Therefore, there could not have been any request for rehearing of the finding under Heckler v. Cheney. And then if you look at not only the petitioner's brief but the intervener's brief, they never even mention that finding, let alone raise any issues with regard to it. And so, therefore, there was jointly the failure of jurisdiction for the failure to seek rehearing, plus the failure to raise it on appeal and, therefore, waiver. And so that issue. Beyond those issues, it kind of looks like the other panels, unless something goes awry in those cases, the panels that took the very similar cases earlier on in December, was it? Yes, Your Honor. Are probably going to be deciding the merits of what's in front of us, are they not? They are similar cases. I will say the facts of this one are peculiar to this case. I mean, because if you get to the merits issue, well, let me point out first that the Cheney issue was not present in those cases. I know that. But aside from that, if you get to the merits of the public interest test, it does come down to a balancing, to a review of what were the circumstances of these contracts, how did they impact the rate payers, how did they impact the company. And so, you know, in that sense, if you got to the issue of how does this impact the public interest, it does come down to a case-by-case analysis. That's the public interest side of it. But those panels also have in front of them the question of should you even be in public interest land or should you be in pure, just, and reasonable land, right? If they were to, well. That's right. We're talking the merits now. The question is, I take it they will decide that question, should we be in public interest land or in some other land, correct? Well, that's right. I mean, the same question is presented to them, whether or not it's just and reasonable or whether we are in the Mobile Sierra Territory. Although, you know, in that regard, I should point out that the Ninth Circuit has already, their big complaint is that the market-based rate regime is not sufficient under 205. That is their basis for getting a just and reasonable as opposed to a public interest determination. And the court in Lockyer has already affirmed the commission's market-based rates program and found that it meets the 205 requirements. And so, you know, although that issue is still presented in those cases, I'm not sure in light of the Ninth Circuit's Lockyer opinion that there's any way to get to the conclusion that just and reasonable determination would apply in any event. Well, Lockyer seemed to assume that market-based rates is as good as filed rate doctrine. That certainly seemed to be true. On the evidence they had in front of them for the spot market anyway, they said, yeah, but you didn't do the market-based rate analysis properly. You weren't getting the right facts, et cetera, et cetera, et cetera. I don't see that in this case. I don't know if it's in the other cases. I mean, I don't see the evidence of that in this case. I don't know about the other cases. That's right, Your Honor. I mean, no allegations like that have been made in this case, that there was the same deficiency of filing or, you know, any of those kind of points that were made. And the point, too, is that even under Lockyer, what the result of that was is that the commission had the ability but was not required to remedy that as a tariff violation. It was under the seller's tariff, a failure to meet their tariff. It did not mean that the rates were somehow no longer approved under 205 or that 205 was no longer satisfied, but it could be remedied as a tariff violation. Let me ask you another question that's sort of merit-ish, assuming we ever got there. It looks to me, when folks have entered into these market-based contracts and the contract says nothing explicit about what standard of review by the commission ought to be, it looks to me like, from these opinions in this case, we have one commissioner saying, well, obviously the fallback position is of public interest. We have one commissioner saying, well, obviously the fallback position is just and reasonable. And we have a third commissioner saying, well, I kind of like to look at everything and make up my mind. That's what we've got. It looks to me from that and from that policy thing they floated a year or so ago or two ago, where they also were split two to two on what the rule, the default rule should be, it looks to me like we don't have a commission decision on what the default rule is when there's nothing in the contract. Let's assume for the moment there's nothing in the contracts one way or the other. I won't assume that's true, but let's just for my questions. The question is, am I right? The commission is just split up. We are not being told what their position is. Not yet, anyway. The commission in this case, Your Honor, found that it was not necessary. Let me say, to start off with, they did point out that reaching the contrary conclusion, that Texaco, it would be contrary to Texaco to have reached the contrary conclusion to where that came out. But putting that aside, they found that it was not necessary to rely on a default rule of any kind because they chose to take the full review of the contracts in this case and to look very carefully at what the party's intent was, and so it wasn't necessary to apply a default rule of any sort. They, as Commissioner Wood, he said that, certainly. But was it Commissioner? I always get their name wrong. Brown. Brownell. Commissioner Brownell said, we don't have to go there. It's perfectly clear that the public interest standard is the default rule. And the other commissioner, Masey, said, it's perfectly clear to me that the default rule is just unreasonable. So when you tell me the commission decided, that's what I'm trying to figure out. It doesn't look to me like the commission decided on a specific rule at all. Well, the commission didn't feel that it needed to pick a default rule in this case, Your Honor, because they found that there was evidence of the party's intent, and so there wasn't any need to go to the issue of, if we have no evidence, what standard do we apply? Because there was evidence of the party's intent, and, therefore, they applied what the evidence indicated would have been the intent of the parties in this case. And you can see that. I'm sorry, Your Honor, I didn't mean to interrupt you. In paragraph 43 at the excerpts of record at 1581, I mean, they begin with the point that, you know, if they reach the contrary result, basically, if you applied the JNR as the default rule, it would fly in the face of Texaco, and they made that point several times. But they went on to say we need not rely on Texaco's default rule, because we went through the exercise of finding the party's intent, and because we did that, we don't need to apply the Texaco default rule in this case. Okay. What was the contract language here? The contract language. Can you tell me the excerpt's reference, if you have it? Yes, Your Honor. The contract language. Well, one set of contracts had no language at all on the subject. There's this reference in paragraph 43 to it that confused me, because I remembered it the same as Judge Fernandez, that the contract was silent. One contract had a provision in 6.1 or whatever it was, and the other one had nothing at all. Yeah. One had nothing at all, and the other one said that if both of us want to apply, we can, something like that. Right. The WSPP had the language in 6.1, and then the Edison Institute contract, they did not have language specifically addressing that, and the commission then looked to the circumstances of the contracting to make a determination about the party's intent. I'm sorry. I thought I had a reference to what page the language was on, but I can figure that out while Mr. Irwin is speaking. Yeah, he was asking about where the language is in the excerpt. Right. If there's nothing further, I'll cede the remainder of my time to Mr. Irwin. Okay, that's fine. Mr. Irwin. Good morning, Your Honors. May it please the Court. My name is Kenneth Irwin. I'm with the law firm of McDermott, Will and Emery. I represent El Paso Merchant Energy, one of the suppliers sued by Pacificorp below. I have the privilege today of speaking on behalf of all of the suppliers. Your Honors, as I understand how a court of appeals approaches decisions, especially from the appeals taken from the FERC, you begin with an assessment of whether the court has subject matter jurisdiction, and then a question of what is the appropriate standard of review applied to the commission's decisions, and then finally the merits of the decision. There's been an ample discussion as to both this question of the court's subject matter jurisdiction and some discussion by Ms. Perry about the discretion that the commission has afforded. If I may, I'd like to address the merits, because I think as has been discussed earlier, this case is one of buyer's remorse. The record demonstrates amply that Pacificorp knew what it was doing when it got into these contracts. Pacificorp is a large enterprise, has been in the power business for a very long time. They are very skilled in the arts of how to contract for wholesale supply, and as Judge Reimer pointed out, Pacificorp itself sold power at prices well in excess of those in the contracts it challenges here. Indeed, as I have prepared for this argument today, it seems clear to me that Pacificorp's claims are rather disingenuous. When this case began, Pacificorp itself acknowledged in its complaint filed against El Paso and the other suppliers that the Federal Power Act does not excuse a party from a contract simply because it is uneconomic. Pacificorp admitted that merely because a contract becomes uneconomic in hindsight does not make it unjust, unreasonable, or even contrary to the public interest. Throughout this case, Your Honor, we've had a tough time pinning Pacificorp down to one particular theory. As we tried to explain in our brief, their theory was ever-evolving, and often it appeared not to stand the test of reciprocity. For example, in the spot power proceedings that Mr. Nordstrom mentioned, Pacificorp opposes refund liability. With regard to their theory here, Pacificorp advances a theory that says contracts are enforceable when they're profitable for the buyer, but they're not binding when they're uneconomic for the buyer. Pacificorp's claim of damages associated with these contracts was supported by no credible evidence. They claim to have suffered some $53 million in damages. Neither the commission nor the ALJ or even the commission's trial staff found any credible support for that. And, in fact, the ALJ's assessment of that evidence was that it was farcical. Their theory was absurd, something that no reasonable regulator could ever accept. It's important to bear this in mind because, as this Court well knows, upholding the sanctity of contracts freely made is critical to what Congress intended under the Federal Power Act and its sister statute, the Natural Gas Act. In the Mobile case, the Supreme Court explained that the purpose of Section 206 is the protection of the public interest. When read in this context, the Court explained, it is clear that a contract may not be said to be either unjust or unreasonable simply because it is unprofitable to the utility. In Sierra, the Court explained that denying the utility, any utility, the power unilaterally to change its contract rates in no way impairs the regulatory function of the Federal Energy Regulatory Commission because all contracts remain fully subject to the FERC's paramount power to modify them to serve the public interest. And, Your Honors, this case is about nine contracts out of approximately 250 executed more or less contemporaneously. They represent less than one-half of 1% of Pacific Corps' total power portfolio. The record shows that they were executed at arm's length in the ordinary course. And one aspect about this, the discussion of the applicable standard of review for these contracts that's been discussed, is what language is there in the contract. The two different master agreements, which are master agreements that are used today, one of them has language talking about making joint application for modifications under Section 205. The Edison Electric Institute contract is silent as to seeking changes, but all contracts here set price as a firm, fixed price object of the contract. These contracts are all about price. When you executed these contracts 15 months in advance of delivery, everybody knew price volatility was a risk. There's nothing about this case that warrants relief, Your Honors. Thank you very much. Thank you, Mr. Irwin. Mr. Nordstrom. Members of the Court, if I'm reading the clock right, I have 49, 47, 46 seconds left, so I will just go with your guidance as to how long you want to hear me. Thirty-nine seconds. Obviously, on the major issue that we discussed before, I can only reiterate, I believe that the issues that we dealt with, the very facts that we dealt with and argued all along was that the language of the Federal Power Act is unequivocal. It requires that all rates be just and reasonable, and it mandates action that FERC must take. We've argued that point all the way along from the beginning of the case to our briefs here to this Court, and I think it would be very poor policy that for a new language and an order that is a slight twist on everything that has gone before, that could somehow knock out of the entire case. It would be a very poor matter of judicial policy. With respect to ---- Thank you, Mr. Nordstrom. I surely understand. I appreciate the arguments being made. Thank you very much. And I understand your positions. Thank you. The matter just argued will be submitted. And we'll next hear argument in Planned Parenthood and the New York Coalition. Thank you.
judges: Fernandez, Rymer, Kleinfeld